May it please the Court, my name is Alan Hurston. I represent Mr. Lombardo. This case was dismissed by the district court for failure to state a cause of action. The amended complaint sets forth a challenge to Oregon's regulation of residential signs. The complaint alleges that Mr. Lombardo wants to display a sign that's 8 feet by 4 feet or 32 square feet. A sign of that size with commercial on-site speech is perfectly permissible, but for the expression of ideas, there's a prior restraint. Mr. Lombardo is required to apply and receive from the state either a permit or a variance. Well, I thought he could put anything he wanted on that sign. The only objection is the size. Yes. He could put commercial, non-commercial, religious, political, anything he wants to say on that sign. But not the 8 foot by 4 foot sign, the one that he wants to have. Whatever the size of the sign is, he can put up anything he wants to put up on it. No, I disagree. A 4 foot by 3 foot sign or 12 square feet, he can put anything he wants. What message can he not display on the sign that he wants to put up? Expression of ideas. Elect Jane Doe, for example. Keep abortion legal. End abortion today. Those things he cannot put up without permission from the state. Mr. Lombardo never applied for a variance, right? Yes. Do you think he has standing to challenge at least the variance procedures without having applied for one? Well, surely he has standing to make a facial challenge. Well, there are two different challenges. Now, one is what you call, I guess, to the substance of the law, which is that it's content-based. And the second is to the procedural challenge and to the variance, right? Those are two different challenges, and I think they require two different kinds of standing, don't they? I disagree. Well, I would think that a facial challenge could be made to either of those types of regulation on the grounds that for good cause shown is not defined. A facial challenge to be made as to that doesn't have to apply for it at all. And I think that's true for both types of situations that you stated. Now, why do you say this statute is content-based? Well. Where do you find that? Give us the precise provision you're depending on. The exact section? Well, or the language, yeah. Language. Well, the Oregon Modus Information Act is rather complicated, and in it, it states that certain speech requires a permit or also a variance. But is that based on content? Yes. Requirement? Yes, because on-site speech is exempted. On-site commercial speech is exempted. Well, not just commercial speech, any kind of on-site speech. Right. Any kind of on-site speech is exempted. But expression of ideas is never exempted because it can never be on-site. Well, he's in the residential area. Yes. So there's no on-site business to advertise. Well, he does have a business. So he can put up a sign that says, Peace in the Gulf. No, he can't because that's expression of ideas. The only thing that's allowed without a prior restraint is on-site commercial speech. Oh, no, no, not commercial, just on-site. On-site speech, correct. But any type of non-commercial speech. But why is that content-based? It seems like it's location-based. It is content-based because the statute or the act targets the expression of ideas. How so? It targets whether it's on-site or off-site. How is that targeting of an idea? For instance, if you have a church or a temple or synagogue, you say, you know, come and pray with us on Sunday. Is that permissible for a church to put that kind of sign up? Yes, but these are residents. Well, isn't that content-based? Isn't that the expression of an idea? But we're talking about residents. A resident can never have an expression of idea under the Oregon system because. . . Well, what can a resident have? The only thing a resident can have if he's selling, for example, apples. . . Well, suppose he's having a prayer meeting on Wednesday. Prayer meeting Wednesday night, can he do that on his premises? Yes, he could say that. Then what's the difference between apples on sale on Tuesday and a prayer meeting on Wednesday? Oh, but we look at content. If he reads a sign that says, keep abortion legal, that's not permitted. No, but neither is, you know, buy apples at my farm 20 miles out of town. That's true. How is it content? I don't understand how it's content-based. Because we have to look at the sign. We have to read the message. And it particularly targets expression of ideas. It's very difficult, almost impossible, to say for a resident to put up a sign that says, elect Jane Doe, for example. Because elect Jane Doe . . . Well, let's talk about the sign that you want. The sign that you want says, peace in the Gulf. Now, you tell me that you can't . . . the statute prohibits that on your property? Yes, so the sign that he wants . . . Now, what section says that? Well . . . It wouldn't prohibit it, would it, if Mr. Lombardo were the president of the Gulf Veterans Association for Peace? He would have to have, I believe, in his house, and the state would have to believe him, it would have to be the headquarters. Right. But very few people have at their house headquarters for things. Well, very few people sell apples, too, from their house. Well, some people do. Now, Mr. Lombardo happens to sell dogs at his house. He sells wolves and German shepherds at his house. He has some acreage. But he could have his house at the headquarters of, you know, Gulf Veterans for Peace, right? And that's correct. And if he did, he could advertise, you know, Gulf Veterans for Peace in the Gulf or something. Presumably, yes. Because it's connected with his business, his non-profit enterprise. That's right. However, in City of Ladue v. Galeo, the Supreme Court recognized an absolute right for residents to display speech. And that's not affected by on-site or off-site speech. A resident has a right, precisely because of the location of the sign, it's very important, the Supreme Court said, that a resident has a right to say, keep abortion legal, regardless of whether or not he's in some type of association. And that is abridged by this statute, particularly the variance, which allows only 60 days. Even if he received the variance, he can only display the sign for 60 days. And there's no recognition in City of Ladue of any time limitation. And if we're talking about elections, 60 days are not enough. Right now, we've got a presidential election a year and a half away, and already the politicians are going for office and campaigning. So a sign needs to be up more than 60 days. And that right is abridged. That right recognized in City of Ladue is abridged by this act. This on-site, off-site designation has been found constitutional in other circuits. Is that not correct? I don't believe so. I think the First Circuit did not find it constitutional. I don't think any other circuit has looked at that specifically, the on-site, off-site. Maybe RAPPA was one. But that was before. RAPPA was before City of Ladue. And I think RAPPA was City of Ladue and City of Ladue. In RAPPA, they said they did not have to follow Metro Media. And City of Ladue adopted Metro Media, I believe, and said that Metro Media plurality opinion was the appropriate opinion to follow. Getting back to the on-site, off-site, in Metro Media, the court at page 513 said the following. The fact that a city may value commercial messages related to on-site goods and services does not justify prohibiting an occupant from displaying its own ideas of those of others. And that is what we have in Oregon. You go back to the on-site, off-site where the city values commercial messages. Mr. Lombardo can say German Shepherds for sale, but he may not say without permission from the state for a piece in the Gulf. This is not a time, place, or manner. It is content-based because we have to do this different treatment of the commercial speech and the expression of ideas. Also, it is not a time, place, or manner. The word place is important because in City of Ladue, the Supreme Court said the place of the sign is important because the identity of the speaker at a residence is very important in expressing ideas. Who is saying it? The fact that it's Mr. Lombardo is very important as opposed to a Mr. Smith or something. It has intrinsic meaning. Also, in the variance, a variance is permissible only upon good cause shown, and good cause shown is not defined by Oregon. Every family law judge in the United States issues at least once a day an order to show cause, and there's nothing that says whether to show cause constitutes. Well, in Desert Outdoor versus City of Moreno Valley. In order to show cause, a husband should not be required to leave the house this afternoon. In order to show cause, custody should not be granted to the mother. In order to show cause, a husband should not pay $50 a month for an animal. Well, this is for good cause shown. It's a little bit different. For good cause, you have to show the court or show the government when you request a variance that you've got good cause for it. That's not defined anywhere. Isn't that more specific than cause? The case that Judge Ferguson referred to, it just says defendants shall show cause, and here you have to show good cause. Doesn't that make it more specific instead of more ambiguous? That's more ambiguous because no one knows what good cause means. Well, does everybody know what cause means? No, nobody knows what cause is. Well, that's his point. Every day, judges issue hundreds of orders telling parties and cases to show cause or they may even say to show good cause. Are all those orders invalid because they're ambiguous? No, because judges at times have a discretion. No, they're directed to the parties. Right, and they have to prove it to the court, and the court has discretion. We're talking about a state employee here. Why should a judge have discretion to issue an order to show cause? Well, in a family law setting, he has to weigh the facts and determine who is showing good cause or a cause. Here, it's a little bit different. We have a state employee saying to Mr. Lombardo, who wants to put up a sign, thinking, well, maybe I'll put your sign up or not. Mr. Jones, I like you better than Mr. Lombardo, so I'm going to accept Mr. Jones's and not Mr. Lombardo's. First Amendment does not permit regulation of signs on an ad hoc basis, and that's what happens when we have some good cause shown. Now, in this statute, it says that you can't deny it based on content. Isn't that correct? That's correct. And it gives a couple of examples of what would be a good cause for granting it. Right, but it also says that it's not the only reasons. So it allows leeway to the state employee to do whatever he or she wants. Again, it allows unfettered discretion. Favored speakers can be allowed to speak, unfavored people, regardless of the content. There are unfavored people in Oregon, as there are in every state. An unfavored person who the particularly employee of the state doesn't like, you can say, well, you know, I don't, I'm just not going to approve yours. You didn't show me good cause. And we saw the mere possibility of exercising this discretion. Have you tried to find out from the state how many variances have been issued under the OMIA and what the grounds were, what the circumstances were, anything like that, how many have been denied and so forth? Well, no, but if this case gets remanded, perhaps that would be something we could do in discovery. This case was dismissed for failure to state a cause of action. So we never really reached discovery. The mere possibility of exercising unfettered discretion is the violation of the First Amendment. And this court stated in three cases, NAACP v. Western Region v. City of Richmond, U.S. v. Linnick and Young v. City of Simi Valley. And that's the problem we have in Oregon. It's the possibility of exercising this discretion to allow some people to speak but not others. Well, but aren't those cases, cases that involve sort of regulation of content? It's a possibility that content, and it's the possibility in this case, too, that content could be secretly behind a person's denial of a variance. I thought Judge Fletcher just referred to the statute that said it can't be based on content. Well, it can be based upon who the person is who is applying for the content. It doesn't necessarily have to be content-based. The person who works for the state can certainly have a disfavored person, a well-known person whose views are known, for instance, on abortion, and doesn't like those views, and he'll say, I don't approve your variance because he kind of has the idea of what that person is going to put up on the sign. And that creates the problem. There's also a problem with no time limits on reviewing an application for a variance.  We could just sit there if he's an unfavored person and not get acted upon. In Thomas v. Chicago Park District, the Supreme Court recognized that there must be adequate safeguards to guard against this unfettered discretion. FWPBS v. Dallas recognized that the failure to place time limits is a species of unfettered discretion. So that's another reason, I believe, that the Act is unconstitutional. The Court has any further questions? No, but why don't you save the rest of your time? You've got about three and a half minutes, right? Yes. All right. Thank you. Thank you, Mr. Erickson. May it please the Court, Janet Metcalfe for the Appellee. I think the flaw, actually, in the argument here is that there are a number of sort of assumptions that underlie the appellant's argument. And the assumptions simply aren't borne out on this facial challenge. One assumption is that the basic on-site, off-site distinction that the Act draws is a content-based one. And there's really absolutely nothing, at least on this record, to back that up. The way the Act is written, really, any content conceivably could be on-site and any content can be off-site. It simply depends upon the relationship between what's set on the sign and the location where the sign is displayed. What compelling government interest is there in making this distinction? You have to have a compelling government interest, do you not? I'm not sure that we do. Well, there are a lot of cases that say you don't. Well, it depends, of course, on whether one sees this as a time, place, and manner regulation or as content-based. If it's content-based, then, yes, we have to show a compelling state interest. But I think it's not content-based, and I think that throws it into time, place, and manner, and I guess place being really the determinative factor here. Well, now we're looking probably at aesthetics more than anything else. Aesthetics and, I think, clutter. One of the goals of the Act, which is achieved partially through a numerical limit on the number of permits, is to simply limit the number of signs that are visible from interstate and state highways. And that ties in, obviously, to aesthetics, as you suggest. But you allow them to do it half-size, and you allow the on-site operator to do it full-size. I find that a rather irrational distinction. And I don't know that in all cases one could make a great case for that. Again, I think the assumption of allowing on-site signs to be of any size, perhaps it would have been, this is one of those odd situations where I think perhaps the state could make a good argument for more regulation rather than less. Perhaps it would have made more sense to say on-site signs also have some sort of size limitation on them. But obviously that would have restricted speech even more and certainly not made the appellant very happy. Well, you could certainly cure the problem by having it to the same size for everybody. Right. And, of course, another assumption that underlies the appellant's argument is that most residential sites will not be on-site signs. Again, I think that's a very questionable assumption, as some of the Court's questions, I think, have suggested. There's no reason apparent on a facial challenge to this law why someone could not create a committee, a weekly meeting, a daily meeting, a monthly meeting, whatever, in their own home for whatever interest group, whatever point of view they wish to espouse, and then have an on-site sign of whatever size they wish. Now, if the person who wants to put up a sign says, we think about this a lot at home, is that enough? I'm not sure. The Act is worded very broadly because the term is activities. One of the terms is an on-premises activity. There has been, so far as I know, essentially no state case law or administrative case law that has really fleshed out how formal or informal an activity must be. I think one could make a case for simply saying that if we sit around and we discuss this regularly over the dinner table, it's something we think about a great deal in this household, that that's an activity. I'm not entirely certain either that the administrative agency in the first instance or a court might agree with that, but it's not an entirely implausible reading of the Act. Activity is, I think, perhaps deliberately chosen to be a rather broadly framed term. Has the Oregon Department of Transportation issued any regulations governing the variance process? Only the ones that are attached to the appellant's brief, which set out a couple of examples, as the court's questions have suggested, of what good cause is. For instance, is there a time limit on the actual, you know, on the Act? No. No. You think that's a defect? I think it's not. Again, if we were in a content-based situation, yes, I would agree that it would be a problem. I think it's not here because of the very express provision in the statute itself that variances cannot consider content. And I think at that point, you're at the same sort of point of analysis, I think, as the court was in Thomas, where it got past the standards for issuing a permit and got to the level of exceptions to those requirements and said, well, no, there need not be really specific provisions here, including time provisions, because, in fact, those might invite more regulation of speech rather than less, and that having some flexibility can actually be a good thing. Would it maybe be a wise thing for the department to set a time limit? I think probably it would. Is it constitutionally required? I think not. Can he put on his property a sign, and we won't mention the size, and we won't mention for how long, can he put up a sign under the statute on his property that says peace in the Gulf? Yes. And there's no restriction whatsoever about that peace in the Gulf sign? No. The only restrictions are it has to be 12 square feet. Right. But he can get a variance. Correct. Which doesn't concern content for a larger one. And the sign can only be put there for seven months, right? 60 days. Temporary. At a residence, what can you do? Well, and this, again, and I'll frankly, I find the statute and the rule rather inconsistent on this point. It's certainly clear that you can put up something 12 square feet or less that says anything on your residence. Forever. Right. There's no time restriction on the statute on his property putting up that message. Right. All right. Once you see 12 square feet. The only question now is he's come back a second time, he wants 36 square feet rather than 12 square feet. Right. Now, to do that, he has to get a variance. Right. All right. And it's frankly a little unclear to me under the rule exactly how long he can leave it up, but it's at least 60 days. It has nothing to do with on-site or off-site. Nothing. Nothing whatsoever. He can put up a sign, peace in the Gulf, period. Right. All right. Right. But he could even evade any of those problems either by having it on-site or having it be 12 square feet or less. He can put up there anything he wants to put on there. Right. All right. Exactly. Exactly. And the agency is forbidden from considering what he said. Ms. Metcalf, this statute contains one exception that seems to me to be just the same as the exception in National Outdoor Advertising and Desert Outdoor. That's the governmental exception. It says, you know, exception is for signs of a governmental unit including but not limited to traffic control and so on and so forth. That included but not limited to means they can put up virtually any kind of sign they want, right? They being a governmental agency. Apparently, there's – They could say, you know, join the National Guard today and support the Gulf War order, right? Right. There's no definition. Governmental unit is defined in the statute. Traffic control device is defined in the statute. But signs of a governmental unit, that's the whole phrase, is not defined in the statute. So it's difficult to know. Well, but there's this including but not limited to phrase. Right. Isn't that a problem? It might be. I have two answers, I think, to that. The first is simply that I don't think that's ever been here below ever the focus of the appellant's attack. The appellant has essentially set that aside and said, where I find a content-based distinction in this act is either on the on-site, off-site distinction itself or in this exception for signs on one's residential property. So I think that's really not fairly raised by the appellant and wasn't fairly raised by the appellant below. Well, but the judges have raised it. Yes. And I will frankly admit that I have thought about that question. I am hard-pressed to distinguish this case from the ones you mention, although they, if I remember correctly, each one of those cases has a few more exceptions, but I don't know that that does anything for me other than to say that there's some quantitative difference, which probably doesn't appear to make a qualitative difference, admittedly. Of course, it seems possible to me that the Oregon Supreme Court could give that entire phrase sort of like a narrowing interpretation, right? You know what I mean? Give it a strict interpretation so that it's constitutional? Yes, and I think it would be fair to say, at least fair to say, that at present Oregon constitutional law regarding free speech claims is a tougher road to hoe for the state. State appellate court cases rarely reach the First Amendment because we're usually in so much trouble under our state constitution that we never get there. They could give it a narrowing construction. The other possibility is certainly, and I think that this possibility is noted in one of this court's cases, and I've forgotten now which one, but one of the ones you mentioned, there's the possibility that if that were raised, the state might be able either to offer itself a limiting construction and or to offer a compelling state interest, which would justify these signs probably in conjunction, admittedly, with some kind of limiting construction that would allow a compelling state interest to be shown. But your position today, this issue, this precise issue hasn't been raised or litigated in this case. That's, yes. But I'll admit that if you get past that point, those earlier cases are quite troubling, and I cannot offer any persuasive way to distinguish them, frankly. Getting back to the time upon which, and there's no time limit on granting or denying a permit, aren't we into a prior restraint problem? Well, I think not, and again, I think because we're not concerned with content, and again, Thomas... We are concerned with content to the extent that we're saying if it's an activity on the premises, okay. Activity not on the premises, you've got to go get a permit, and there's no time limit on that. Well, but we're talking about a time limit, I think, solely on this variance procedure, and again, that really, I think, becomes time, place, and manner because you can say anything you want as long as you don't say it too loudly or using up too much physical space to say it. So I think we're back again to time, place, and manner. Manner, I guess, being the pivotal phrase, the pivotal term here, and in that situation, I don't think we have to have a time limit. And with that, frankly, unless the Court has any other questions, that's all I have. Thank you. I guess now, thank you, Mr. McCaskill. Rebuttal? I found that statutory provision which says that the act does not apply to on-premises signs, and that's ORS 377.7351C. That provides an exception to on-premises. Or a 12-foot sign. That's variance, right. Now, as to the 4-by-3 sign or the 12-foot sign, if the Court is applying to it. Did you say there is a content restriction on a sign that is 12 square feet or less? No. All right. You didn't say that. I'm not saying that. But I think a question of fact may be raised, and maybe if the Court is considering affirming on that basis this question of fact as to whether or not a 4-foot-by-3-foot sign can be seen from State Highway by somebody traveling at 55. Well, there's a provision for variance. Right. That goes back to the variance. You're not challenging the at-use. Right. Well, we're not satisfied with a 4-foot-by-3-foot sign. What's the point of timing for it? No, we're saying that you can put any content on, but the content is ineffective is what we're saying for a 4-foot-by-3-foot sign because it's so small. In the prior lawsuit, it must have been visible because you said that's what you wanted. No. You said it isn't visible. What is it? No, we never said we wanted that. In the prior lawsuit, there was no size stated, and then the law got changed. The statute got changed. Remember, we argued this case in July, I believe, July 11th of 1999, and then in the fall the statute was changed to provide for a variance. So the court then remanded, and then an amended complaint was filed, which put the 8-foot-by-4-foot size in, but prior to that there was no size stated in the complaint. And that's a little bit of the history. So he's never said he wanted a 4-foot-by-3-foot sign. Is this a subdivision? No, he's got several acres, as I pointed out, and he raises wolves and German shepherds. Which is one reason you'll never see me on that property. It's all residents. No, it's a rural road. The road goes from the coast to Grants Pass, and it goes through hills, and it's hilly, and it's a state highway he lives on. The man likes animals for some reason. He feeds wild animals at night. He leaves out food for them. He used to own a pet store in Santa Ana on First Street, and he was involved in an automobile accident, and eventually he lost that. But anyway, that's a little bit of his history, and he's a very interesting person. Getting back to the statute, as far as the court raised that the government could put anything it wants on a sign, I think that is part of this case because we are alleging violations of national media. We put the state on notice. We've never had the opportunity to argue it because we've never gone past a motion to dismiss. There's been no discovery. There's been nothing happening in this case. If the court finds that a problem, we certainly believe the case should be remanded and get into those factual concerns. If the court has any questions. Have you been to Las Vegas recently? A few years ago. There were quite a few signs there. You've seen all the signs on the portion of the highway to Las Vegas? Sure. Do you want Oregon to look like that? Well, that's not really what this case is about, I think. But frankly, I love that because my son is in the outdoor advertising business. First of all, second of all, I believe in freedom of speech. And every time I see a sign, I think this is a great country. Someone could put up a sign, whereas you go to Cuba or some other country, you can't do that. And I think it's terrific. I wish there were millions of signs everywhere. All right, Mr. Thurston. Thank you. We thank both counsel. And this case is now submitted for a decision. We stand in adjournment at this time. All rise. This court for this session stands adjourned. Thank you. And we will adjourn.
judges: B Fletcher, Ferguson, Tashima